UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re PARMALAT SECURITIES LITIGATION

This document relates to: 05 Civ. 4015

MASTER DOCKET
04 MD 1653 (LAK)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ENRICO BONDI,

                Plaintiff,

        -against-

BANK OF AMERICA CORPORATION, et al.,

                Defendants.

05 Civ. 4015 (LAK)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OPINION**

Appearances:

> John B. Quinn
> R. Brian Timmons
> Loren Kieve
> Michael B. Carlinsky
> QUINN EMANUEL URQUHART OLIVER & HEDGES LLP
> *Attorneys for Plaintiff*

> Joseph B. Tompkins, Jr.
> Alan C. Geolot
> Mark P. Guerrera
> SIDLEY AUSTIN BROWN & WOOD LLP
> *Attorneys for Defendant Banc of America Securities
> Limited*

LEWIS A. KAPLAN, *District Judge*.

      Defendant Banc of America Securities Limited ("BASL")[1] moves to dismiss this

---

    [1]

        The parties agree that BASL formerly was known as Bank of America International, Limited, which also was named as a defendant in this action.

action for lack of personal jurisdiction.[2] The case is described in detail in a separate opinion issued today (the "Main Opinion"), familiarity with which is assumed.

*Facts*

The following facts are taken from the complaint and presumed true.

BASL is a limited liability company organized under the laws of the United Kingdom with its principal place of business in London. It is a wholly-owned subsidiary of Bank of America Corporation.[3] Like all of the BoA[4] defendants, BASL's "finances, policies and business practices . . . were dominated, controlled and directed by the Bank of America entities and their officers and employees headquartered in North Carolina."[5]

BoA maintains an "integrated global organization."[6] The Bank's website states that BoA's Global Corporate and Investment Banking group provides a broad range of financial services through a network of offices in 31 countries.[7] BoA does not break down the revenue from Global

---

[2] BASL, along with its co-defendants, moved also on the grounds of failure to state a claim and to join indispensable parties. The Court addresses those defenses in the Main Opinion.

[3] Cpt. ¶ 26.

[4] Defined terms, unless otherwise specified, have the meanings ascribed to them in the Main Opinion.

[5] *Id.* ¶ 28.

[6] *Id.* ¶ 218.

[7] *Id.* ¶¶ 219-23, 225-26.

Corporate and Investment Banking by business unit, but reports the revenue as a consolidated figure.[8]

BASL played supporting roles – roles that the complaint does not always spell out clearly – in several of the international financial transactions at issue, in particular the December 1997 $80 million credit arrangement with a Venezuelan Parmalat subsidiary,[9] the September 1998 $100 million credit agreement with a Brazilian Parmalat subsidiary,[10] the October 1999 $25 million agreement with a Mexican Parmalat subsidiary,[11] and the December 2001 $80 million loan.[12]

BoA employee Luca Sala devised and helped implement some of the transactions at issue,[13] including the September 1998 $80 million credit agreement with the Venezuelan subsidiary,[14] the $300 million equity investment in Administracao,[15] and the December 2001 $80 million loan.[16] Sala "received the support of" and "was supervised by" Bank of America employees

---

[8]      *Id.* ¶ 224.

[9]      *See id.* ¶¶ 78-87.

[10]      *See id.* ¶¶ 112-30.

[11]      *See id.* ¶¶ 131-41.

[12]      *See id.* ¶¶ 188-94.

[13]      *Id.* ¶¶ 60, 63.

[14]      *See id.* ¶ 101.

[15]      *Id.* ¶¶ 155, 157-59.

[16]      *Id.* ¶ 193.

in a number of locations, including North Carolina, New York, Chicago, and London.[17] There is, however, no indication that Sala worked for BASL, as opposed to some other BoA entity.

More generally, "the conduct, transactions, acts and omissions that form the basis of th[e] complaint were structured, overseen, implemented and monitored by . . . the Bank of American [*sic*] entities and their officers and employees headquartered in North Carolina."[18] The transactions were "approved at the top levels of Bank of America and required the coordination of" BoA management committees in locations throughout the world, including North Carolina, New York, England, and Italy.[19]

The transactions in question allegedly had effects in North Carolina. Investors in North Carolina purchased Parmalat's securities and were harmed by the frauds.[20] Furthermore, the complaint alleges that BoA's conduct "has substantially affected Parmalat's operations in North Carolina, including without limitation its dairy operations and its ability to conduct financial operations in North Carolina."[21]

---

[17] *Id.* ¶ 60.

[18] *Id.* ¶ 29.

[19] *Id.* ¶ 69.

[20] *Id.* ¶¶ 36-37, 39, 40, 43, 45.

[21] *Id.* ¶ 391.

*Discussion*

*A.      Standards*

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing jurisdiction. The applicable standard depends upon the procedural context in which the jurisdictional challenge is raised.[22] Where, as here, no discovery has taken place, the plaintiff need make only a *prima facie* showing of jurisdiction "by pleading in good faith, *see* Fed. R. Civ. P. 11, legally sufficient allegations of jurisdiction."[23] If affidavits are submitted, the Court is to resolve factual disputes in the plaintiff's favor.[24]

BASL has submitted an affidavit stating in substance that it has no office or property in North Carolina, never has filed documents with the Office of the Secretary of State of North Carolina, and complies with United Kingdom regulatory requirements regarding corporate governance "by having an independent Board of Directors that establishes the approval process for all business it conducts."[25] The affidavit does not contradict the allegations in the complaint.

Analysis of personal jurisdiction requires a two-step inquiry. A court first must determine whether the law of the state in which the action was commenced would permit the exercise of personal jurisdiction by courts of general jurisdiction in that state. Second, the court must

---

[22]

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990).

[23]

*Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998) (quoting *Ball*, 902 F.2d at 197); *accord In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003).

[24]

*See Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001); *A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993).

[25]

Church Aff. ¶¶ 4, 7-11.

determine whether the exercise of jurisdiction in such a case would be permissible under the Due Process Clause of the Fourteenth Amendment.[26]

This action was filed in the Western District of North Carolina and then transferred here for pretrial proceedings by the Judicial Panel on Multidistrict Litigation. The relevant state law therefore is that of North Carolina, not New York.

The parties assume that the allegations against BASL satisfy the requirements of North Carolina's long-arm statute, which the North Carolina courts have held should be construed to extend to the fullest extent permitted by the Fourteenth Amendment's Due Process Clause.[27] The only issue therefore is whether a North Carolina court's exercise of personal jurisdiction over BASL would comport with due process.[28]

The question whether due process permits an exercise of jurisdiction requires "an analysis consisting of two components: the 'minimum contacts' test and the 'reasonableness' inquiry."[29] The former looks to "whether the defendant has certain minimum contacts [with the forum] . . . such that the maintenance of the suit does not offend traditional notions of fair play and

---

26 *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002); FED. R. CIV. P. 4(k)(1)(A).

27 *See Century Data Sys., Inc. v. McDonald*, 428 S.E.2d 190, 191 (N.C. Ct. App. 1993); *Church v. Carter*, 380 S.E.2d 167, 169 (N.C. Ct. App. 1989); *see also Christian Science Bd. of Dirs. v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001).

28 The Court does not reach Bondi's argument that FED. R. CIV. P. 4(k)(2) confers jurisdiction. The dismissal of the federal RICO claim, *see* Main Opinion, means that that rule's threshold requirement of a claim arising under federal law is not met.

29 *Bank Brussels Lambert*, 305 F.3d at 127 (citing *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996)).

substantial justice."[30] The latter asks "whether it is reasonable under the circumstances of the particular case" to assert personal jurisdiction.[31]

B.    *Minimum Contacts*

Contacts with the forum state may confer two types of jurisdiction – specific and general.[32] Specific jurisdiction exists when a state "exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum."[33] General jurisdiction, on the other hand, "is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts."[34] The plaintiff argues that the complaint alleges facts that establish both specific and general jurisdiction.

---

[30]
    *Id.* at 127 (quoting *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 152 (2d Cir. 2001) (in turn quoting *Calder v. Jones,* 465 U.S. 783, 788 (1984))) (internal quotation marks omitted).

[31]
    *Id.* at 129 (quoting *Metro. Life*, 84 F.3d at 568 (in turn citing *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945))) (internal quotation marks omitted).

[32]
    *Metro. Life*, 84 F.3d at 567-68.

[33]
    *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984)) (internal quotation marks omitted).

[34]
    *Id.* at 568 (citing *Helicopteros*, 466 U.S. at 414-16).

*1.    Specific Jurisdiction*

Minimum contacts for purposes of specific jurisdiction exist "where the defendant 'purposefully availed' itself of the privilege of doing business in the forum and could foresee being 'haled into court' there."[35] Close examination of the complaint reveals that the only North Carolina contact in connection with the events giving rise to this suit is that the transactions in which BASL played a part were designed, overseen, and coordinated by BoA entities and individuals in North Carolina. In other words, BASL at most accepted instructions from North Carolina in connection with the four transactions to which it was a party.

This is insufficient. "Jurisdiction over a parent corporation," the Supreme Court has noted, does not "automatically establish jurisdiction over a wholly owned subsidiary. Each defendant's contacts with the forum State must be assessed individually."[36] In this case, there is no indication that BASL, as opposed to its parent, conducted any business in North Carolina in connection with the events at issue, purposefully directed its activities at North Carolina residents, or otherwise availed itself of the privileges of North Carolina's laws. The plaintiff's statement that BASL "took 'direct actions to create a connection with North Carolina' by participating as agent and as the recipient of a guarantee in transactions that were conducted by a North Carolina resident (its parent corporation) and which originated from . . . North Carolina"[37] is unpersuasive and not

---

35

      *Bank Brussels Lambert*, 305 F.3d at 127 (quoting *U.S. Titan*, 241 F.3d at 152 (in turn citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) and *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980))) (internal quotation marks omitted).

36

      *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) (citations omitted).

37

      Bondi Mem. 9 (quoting *Christian Science Bd. of Dirs. v. Robinson*, 123 F. Supp. 2d 965, 974 (W.D.N.C. 2000)).

supported by the case law that he cites.[38] *Accepting* instructions *from* persons based in North Carolina, without more, is hardly equivalent, as the plaintiff seemingly would have it, to *giving* instructions *to* persons based in North Carolina. It is not clear whether the latter circumstance would suffice for specific jurisdiction in this case, but the former does not.

The allegations of injury suffered in North Carolina also are insufficient. The alleged injury to investors is irrelevant. The Main Opinion dismissed this action insofar as it seeks recovery on behalf of investors. The hypothesized and entirely unspecified injury to Parmalat's North Carolina operations also is irrelevant. The plaintiff seeks recovery on behalf of the foreign entities in Extraordinary Administration in Italy, not Parmalat's United States subsidiaries. It is the United States subsidiaries, not the foreign ones, that are alleged to distribute products in North Carolina.[39] While it is possible to imagine a connection between the financial woes of the Parmalat Debtors overseas and the financial health of any United States subsidiaries with operations in North Carolina, no such connection is alleged, let alone specified, in the complaint.

### 2.    *General Jurisdiction*

A state may assert general jurisdiction over a corporation if the corporation has maintained "continuous and systematic general business contacts" with that forum.[40] Bondi seeks

---

[38]

> *Christian Science Bd. of Directors*, on which the plaintiff principally relies, was a trademark infringement case in which the court found personal jurisdiction over an out-of-state defendant who controlled the content on a web site that was indisputably located within North Carolina and maintained by a North Carolina resident. *See Christian Science Bd. of Dirs. v. Nolan*, 259 F.3d 209, 212-13 (4th Cir. 2001).

[39]

> *See* Cpt. ¶ 34.

[40]

> *Helicopteros*, 466 U.S. at 415-16; *accord Metro. Life*, 84 F.3d at 568.

to establish such jurisdiction based on the allegations that BASL is dominated and controlled by BoA's North Carolina headquarters and that BoA operates an integrated global organization of which BASL is a part.

In weighing the sufficiency of these allegations, the Court is guided by the Supreme Court's leading decision on continuous and systematic general business contacts, *Perkins v. Benguet Consolidated Mining Co.*[41] In that case, the defendant company's mining properties all were located in the Philippine Islands. During the Japanese occupation of the Philippines, however, the company's president, who was also its general manager and principal stockholder, returned home to Ohio. There he ran the company's business, kept its files, conducted correspondence, held directors' meetings, drew checks in favor of himself and his secretaries, and dispatched funds to purchase machinery for the rehabilitation of the properties in the Philippines.[42] The Supreme Court found that the corporation's conduct of "a continuous and systematic, but limited, part of its general business"[43] in Ohio meant that an Ohio court's exercise of jurisdiction over the company did not offend the

---

[41]

342 U.S. 437 (1952).

A number of cases address the conditions in which a subsidiary corporation's continuous and systematic contacts with a forum state justify the exercise of jurisdiction over a foreign parent. *See, e.g.*, *Fielding v. Hubert Burda Media, Inc.*, __ F.3d __, No. 04-10297, 2005 WL 1531441, at *7 (5th Cir. June 30, 2005); *Benton v. Cameco Corp.*, 375 F.3d 1070, 1080-81 (10th Cir. 2004). The Court does not now decide the applicability of these cases to the present one – in which jurisdiction over the parent is uncontested but jurisdiction over the subsidiary is in dispute – except to note that several cases have applied such precedents to situations like the present one. *See Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 345-46 (5th Cir. 2004); *Motown Record Co., L.P. v. iMesh.Com, Inc.*, No. 03 Civ. 7339 (PKC), 2004 WL 503720, at *4 (S.D.N.Y. Mar. 12, 2004).

[42]

342 U.S. at 447-48.

[43]

*Id*. at 438.

Fourteenth Amendment.

Drawing all reasonable inferences in the plaintiff's favor, this case may come within

*Perkins*. If true, the allegations of dominance and control over BASL by BoA's North Carolina

headquarters and of a lack of distinction among BoA's worldwide units suggest that a "continuous

and systematic, but limited, part of [BASL's] general business" – namely, management and

supervision of the enterprise – has been conducted from BoA's headquarters in North Carolina.[44] As

the Court cannot exclude the possibility that the plaintiff could prove facts under this complaint that

would bring BASL within the rationale of *Perkins*, the continuous and systematic conduct prong is

satisfied as a matter of pleading sufficiency.

*C.      Reasonableness*

If the plaintiff makes the requisite showing of contacts, the exercise of jurisdiction

"may be defeated where the defendant presents 'a compelling case that the presence of some other

considerations would render jurisdiction unreasonable.'"[45] At least the following five factors enter

into the reasonableness inquiry:

> "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the
> interests of the forum state in adjudicating the case; (3) the plaintiff's interest in
> obtaining convenient and effective relief; (4) the interstate judicial system's interest
> in obtaining the most efficient resolution of the controversy; and (5) the shared

---

[44]

> The statement in BASL's affidavit that it has an independent board of directors does not
> alter this conclusion. It is perfectly conceivable that BASL's board is independent for
> purposes of any relevant U.K. regulatory requirements but that in substance – as opposed
> to form – BASL is indistinguishable from the North Carolina-based BoA defendants. It
> simply is too soon to say.

[45]

> *Metro. Life*, 84 F.3d at 568 (quoting *Burger King*, 471 U.S. at 477).

interest of the states in furthering substantive social policies."[46]

Assuming the existence of the requisite contacts, none of these factors would require dismissal. BASL would suffer no material burden from this litigation, assuming the correctness of Bondi's theory that BASL is merely an *alter ego* or extension of other BoA entities. North Carolina has at least some interest in adjudicating allegations that a major North Carolina-based financial institution – of which, by hypothesis, BASL is but an extension – assisted fraud and related wrongdoing. Bondi's interest in obtaining convenient and effective relief, and the judicial system's interest in obtaining efficient resolution, both point in favor of retaining BASL because it allegedly played a role in some of the same transactions on which the allegations against the other BoA defendants are based. It would be highly inefficient for Bondi to proceed separately against BASL. Finally, the shared interest of the states in furthering substantive social policies is not a major issue here, except that, as discussed above, North Carolina has some interest in adjudicating this dispute.

---

[46] *Id*. (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113-16 (1987)).

*Conclusion*

As the complaint alleges facts which, construed broadly in the plaintiff's favor, establish personal jurisdiction over BASL, the motion to dismiss is denied – albeit without prejudice to renewal upon a factual record fully developed with respect to the factors bearing on the issue of personal jurisdiction.

SO ORDERED.

Dated: August 5, 2005

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)